UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NATHAN BURKHART,

        Petitioner,

v.

RANDEE REWERTS,

        Respondent.

Case No. 1:23-cv-845

Honorable Robert J. Jonker

_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.     **Factual Allegations**

Petitioner Nathan Burkhart is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Following a jury trial in the Emmet County Circuit Court, Petitioner was convicted of delivery or manufacture of methamphetamine, in violation of Mich. Comp. Laws § 333.7401(2)(B)(*i*). On January 7, 2020, the trial court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to 8 to 30 years' imprisonment.

The Michigan Court of Appeals set forth the facts underlying Petitioner's conviction as follows:

> This case arises out of a controlled purchase of methamphetamine. [Petitioner] contacted a confidential informant over social media about possibly purchasing controlled substances, and, after some discussion, the informant agreed to purchase one ounce of methamphetamine from [Petitioner] for $1,150. Police provided the informant with the money and an audio-recording device, and then surveilled the transaction. The informant met [Petitioner] at a public boat launch. [Petitioner] arrived in a green van with two other people. After the informant completed the purchase and turned over the methamphetamine to the police, the officers pulled over the van and arrested all three occupants. The informant and the van's other two occupants were granted leniency in exchange for their testimony against [Petitioner].

*People v. Burkhart*, No. 352422, 2021 WL 4238286, at *1 (Mich. Ct. App. Sept. 16, 2021).

On direct appeal, Petitioner argued that the evidence was insufficient to convict him of delivery of methamphetamine, and that counsel rendered ineffective assistance during plea negotiations and by failing to object to irrelevant and prejudicial testimony or to request a curative jury instruction. *Id.* at *1–4. On September 16, 2021, the court of appeals rejected Petitioner's arguments and affirmed his conviction and sentence. *Id.* at *1. The Michigan Supreme Court denied Petitioner's application for leave to appeal on January 31, 2022. *People v. Burkhart*, 969 N.W.2d 46 (Mich. 2022).

On May 16, 2023, the United States District Court for the Eastern District of Michigan received from Petitioner a letter in which Petitioner indicated that he had been working on preparing a federal habeas petition pursuant to § 2254. (ECF No. 1, PageID.1.) The Eastern District of Michigan construed Petitioner's letter as a federal habeas petition and, in an opinion and order entered on August 14, 2023, transferred the matter to this Court for further proceedings. (ECF No. 4.) On September 13, 2023, Petitioner filed an amended habeas petition, asserting three grounds for relief, as follows:

> I. [Petitioner's] state and federal constitutional rights were violated when the evidence was . . . insufficient when viewed in a light most favorable to the prosecution and could not justify a reasonable person finding all the elements of the crime were established beyond a reasonable doubt.
>
> II. [Petitioner's] state and federal constitutional rights were violated when defense counsel was ineffective for allowing admission of damaging and irrelevant testimony and failng to request a cautionary instruction.
>
> III. [Petitioner's] state and federal constitutional rights were violated where trial defense counsel was ineffective for failing to enter into plea negotiations.

(Am. Pet., ECF No. 10, PageID.27–30.)

**II.    AEDPA Standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit

precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example,

if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.     Discussion

#### A.     Ground I—Sufficiency of the Evidence

As his first ground for relief, Petitioner contends that the prosecution failed to present sufficient evidence to convict him. (Am. Pet., ECF No. 10, PageID.27.)

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable

6

hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658

F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the following standard to resolve Petitioner's sufficiency challenge:

> We review de novo challenges to the sufficiency of the evidence. *People v Savage*, 327 Mich. App. 604, 613; 935 N.W.2d 69 (2019). To decide "whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich. 508, 515; 489 N.W.2d 748 (1992), amended 441 Mich. 1201 (1992).

*Burkhart*, 2021 WL 4238286, at *1. Although the court of appeals cited state authority as the source of the standard, the *Wolfe* court derived the standard from *Jackson*. *See Wolfe*, 489 N.W.2d at 751.

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court

>decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard—here *Jackson* rather than *Strickland*—Petitioner can only overcome the deference afforded state court decisions if the determination of Petitioner's sufficiency is an unreasonable application of *Jackson* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d).

>The Michigan Court of Appeals applied the standard as follows:

>The informant testified about how he met with [Petitioner], and [Petitioner] gave him an ounce of methamphetamine in exchange for $1,150. The detective testified that the informant promptly turned the methamphetamine over to him following the controlled buy. The prosecution also played an audio recording of this transaction. From this evidence, a reasonable jury could conclude that the prosecution proved the first element—that [Petitioner] delivered a controlled substance—beyond a reasonable doubt. An expert in drug analysis and identification testified that the substance recovered during the controlled buy was methamphetamine. From this evidence, a reasonable jury could conclude that the prosecution proved the second element—that the substance delivered was methamphetamine—beyond a reasonable doubt. Finally, the informant testified that he communicated with [Petitioner] over text messages and phone calls to arrange a meeting where [Petitioner] would sell the informant methamphetamine. The prosecution introduced images of the text messages that were exchanged between the informant and [Petitioner]. And, again, the informant testified that he actually met with [Petitioner] and purchased a substance from him, and that substance was later confirmed to be methamphetamine. From this evidence, a reasonable jury could conclude that the prosecution proved the third and final element—that the [Petitioner] knew he was delivering methamphetamine—beyond a reasonable doubt.

>[Petitioner] argues that the evidence upon which the prosecution relied was not credible, but matters such as witness credibility and the weight given to evidence are matters for juries, not appellate courts. See *People v Odom*, 276 Mich. App.

> 407, 419; 740 N.W.2d 557 (2007). Accordingly, we reject this argument, and conclude that there was sufficient evidence to support [Petitioner's] conviction.

*Burkhart*, 2021 WL 4238286, at *1–2. The appellate court's analysis appears to faithfully track the requirements of *Jackson*. The court reviewed the elements that the prosecutor was required to prove and then looked at the evidence presented to see if there was a basis for a rational trier of fact to find that the essential elements were proven beyond a reasonable doubt.

In his § 2254 petition, Petitioner challenges the conclusion that he was the individual who delivered the methamphetamine to the informant. Petitioner speculates that there was no evidence presented that he was the individual who "made any of the calls or texts." (Am. Pet., ECF No. 10, PageID.28.) Petitioner asserts that it "was clear at trial that these experienced drug users and dealers . . . would have done or said anything to evade prosecution. The fact is that the prosecution did not have one eyewitness to this drug deal that was credible." (*Id.*) Petitioner suggests that all witnesses simply pointed the finger at him, and that he was "just along for the ride to Jackson with Mr. Mackey." (*Id.*)

Despite Petitioner's assertions, "[t]he facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016). Petitioner can overcome that presumption with clear and convincing evidence; he has not. He does not offer any evidence to show that the court of appeals' factual determinations are unreasonable on the record.

Similarly, Petitioner fails to demonstrate that the inferences identified by the court of appeals are unreasonable. *Jackson* holds that it is the fact-finder's province to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The *Coleman* Court described a

9

reasonable inference as an inference that a rational factfinder could make from the facts. The inferences identified by the court of appeals rationally flow from the underlying facts. The inferences are not compelled by those facts. The inferences may not even be more likely than not; they are simply rational. *Id*. at 656. Nothing more is required.

As noted above, Petitioner only takes issue with the credibility of the witnesses, arguing that not one witness presented by the prosecution was credible. Petitioner, therefore, invites this Court to reweigh the credibility of these witnesses and resolve all conflicts and make all inferences in his favor. However, it is up to the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences— so long as the inferences are rational. *See Herrera*, 506 U.S. at 401–02; *Martin*, 280 F.3d at 618. Petitioner's invitation turns the *Jackson* standard on its head. Petitioner has failed to demonstrate that the court of appeals' determination that there was sufficient evidence to support the verdict is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on habeas ground I.

### B.     Grounds II and III—Ineffective Assistance of Counsel

Petitioner's second and third grounds for relief implicate the assistance provided by counsel prior to trial, as well as during trial. In his second ground for relief, Petitioner contends that counsel was ineffective "for allowing admission of damaging and irrelevant testimony and failing to request a cautionary instruction." (ECF No. 1, PageID.30.) In his third ground, Petitioner argues that counsel "was ineffective for failing to enter into plea negotiations." (*Id.*)

#### 1.     Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance

prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d), analysis of counsel's performance. In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012)

11

(stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised his ineffective assistance of counsel claims on direct appeal, and the court of appeals addressed them under the following standard:

> "To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Head*, 323 Mich. App. at 539 (quotation marks and citation omitted; alteration removed). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich. 1, 9; 917 N.W.2d 249 (2018). This Court presumes counsel was effective, and defendant carries a heavy burden to overcome this presumption. *Head*, 323 Mich. App. at 539.

*Burkhart*, 2021 WL 4238286, at *2. Although the court of appeals cited state court authority for the standard, the standard applied is identical to *Strickland*. Moreover, if one looks to *Randolph*, the source of the standard is identified as *Strickland*. *See Randolph*, 917 N.W.2d at 252. Thus, there is no question that the court of appeals applied the correct standard, eliminating any possibility that the resulting decision is "contrary to" clearly established federal law.

Because the Michigan Court of Appeals applied the correct standard Petitioner can only overcome the deference afforded state court decisions if the determinations regarding Petitioner's ineffective assistance claims are unreasonable applications of *Strickland* or if the state court's resolutions were based on unreasonable determinations of the facts. 28 U.S.C. 2254(d). The Court, therefore, will consider whether the court of appeals reasonably applied the standard for each of Petitioner's claims of ineffective assistance of counsel.

### 2. Failure to Object to Testimony and Seek Curative Instruction

As his second ground for relief, Petitioner faults trial counsel for "allowing admission of damaging and irrelevant testimony and failing to request a cautionary instruction." (Am. Pet., ECF No. 10, PageID.30.) First, Petitioner faults counsel for not objecting to testimony provided by

12

witness Rolfe, who stated that he was testifying pursuant to an agreement with law enforcement, and that his agreement would be void if it was determined that he had lied during Petitioner's trial. (*Id.*) Petitioner next takes issue with witness Rogers' testimony that when the car was pulled over, Petitioner "asked her to take the money because he had 'warrants,' implying that [Petitioner] had prior convictions." (*Id.*, PageID.31.) Third, Petitioner faults counsel for not challenging Detective Roberts' testimony that "both he and [Detective] Cowell had seen [Petitioner] before[,] implying that [Petitioner] had prior run-ins with the police." (*Id.*) Petitioner argues that all of this testimony was damaging and irrelevant. (*Id.*, PageID.30.)

When considering Petitioner's claim, the court of appeals noted that his argument was "grounded exclusively in [Michigan Rules of Evidence] 402 and 403." *Burkhart*, 2021 WL 4238286, at *2. The court then rejected Petitioner's argument that counsel was ineffective for not objecting to this testimony, stating:

> Addressing the first instance identified by [Petitioner], evidence that the agreement the informant had with law enforcement required that he testify truthfully and that the agreement would be nullified if he was dishonest was probative of his credibility. "Credibility of a witness is almost always at issue, and, thus, evidence bearing on that credibility is always relevant." *People v Spaulding*, 332 Mich. App. 638, 660; 957 N.W.2d 843 (2020). As for the second instance—the one concerning the van occupant's testimony—the prosecution was providing an explanation for why someone other than [Petitioner] was found to be in possession of the buy money because the prosecution's theory was that the informant had purchased methamphetamine from [Petitioner]. Accordingly, her testimony about [Petitioner] giving her the money was relevant. Turning to the third instance identified by defendant—the detective's testimony that he tried to keep a distance from the [Petitioner] during the controlled buy because [Petitioner] knew him—it was relevant because it provided context regarding why the police approached their surveillance the way that they did. Accordingly, all three instances challenged by [Petitioner] as irrelevant were, in fact, relevant, and defense counsel cannot be found ineffective "for failing to raise meritless or futile objections." *People v Putman*, 309 Mich. App. 240, 245; 870 N.W.2d 593 (2015).
>
> [Petitioner] alternatively argues that these three pieces of evidence should have also been excluded under MRE 403. Yet [Petitioner] has provided this Court with no basis upon which to conclude that the challenged evidence was likely to be "given undue or preemptive weight by the jury." *Schaw*, 288 Mich. App. 231. Accordingly,

he has failed to establish that the evidence should have been excluded under MRE 403, and, again, defense counsel cannot be found ineffective "for failing to raise meritless or futile objections." *Putman*, 309 Mich. App. at 245.

*Burkhart*, 2021 WL 4238286, at *3.

In his § 2254 petition, Petitioner reiterates his assertion that the testimony in question should have been excluded under Michigan Rules of Evidence 402 and 403. (Am. Pet., ECF No. 10, PageID.31.) The court of appeals' determination that the testimony was admissible under the state rules of evidence is binding on this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Likewise, the court of appeals' determinations that any objections by counsel would have been meritless or futile are axiomatically correct because they are premised upon state law determinations that bind this Court. Furthermore, "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Petitioner, therefore, has failed to show that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, *Strickland*. Accordingly, he is not entitled to relief on habeas ground II.

### 3. Plea Negotiations

As his last ground for relief, Petitioner contends that counsel was ineffective for "failing to enter into plea negotiations." (Am. Pet., ECF No. 10, PageID.30.) Petitioner provides no factual support for his claim. However, on direct appeal, Petitioner argued that his trial counsel "improperly scored the sentencing guidelines when advising him on a potential plea agreement." *Burkhart*, 2021 WL 42382826, at *3. Petitioner contended that "if he had known the actual guidelines range, then he would have accepted an offer to plead guilty to the delivery of methamphetamine charge without the habitual offender status." *Id.*

14

A criminal defendant is entitled to effective assistance of counsel during plea negotiations. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same two-part *Strickland* inquiry applies to ineffective assistance of counsel claims regarding the plea negotiation process. *See id.* Often, habeas petitioners challenge the assistance of counsel for advising acceptance of a plea offer. Then, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court described the appropriate prejudice analysis where counsel advises rejection of a plea offer:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id*. at 164. Moreover, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *See Missouri v. Frye*, 566 U.S. 134, 147–49 (2012).

In rejecting Petitioner's claim, the court of appeals stated:

> Accepting as true for purposes of this analysis [Petitioner's] account of events in his unsigned and unnotarized affidavit, he alleges that his trial counsel improperly scored the guidelines. [Petitioner], however, ignores that his trial counsel had no way to know how the guidelines were going to actually be scored. His trial counsel could only provide an estimate of how the guidelines were going to be scored, and [Petitioner] has not explained why his trial counsel's estimate was unreasonable. Moreover, defendant has failed to establish prejudice. [Petitioner] has maintained his innocence throughout the proceedings and has proffered no reasonable explanation for why he would have accepted the plea offer if only his attorney had predicted his ultimate sentencing guidelines more accurately. Indeed, in his affidavit, [Petitioner] stated that he "only went to trial because he believed that he was tricked and used" by the prosecution's witnesses. Accordingly, this claim of ineffective assistance of counsel does not warrant appellate relief.

15

*Burkhart*, 2021 WL 4238286, at *3. The facts as found by the appellate court—including Petitioner's insistence on his innocence—are presumed to be correct, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. Petitioner offers nothing to rebut the court of appeals' factual determinations.

Accepting as true the facts found by the court of appeals, the court's further determination that Petitioner would not have accepted the plea offer is plainly reasonable and forecloses a determination that Petitioner was prejudiced in any way by counsel's handling of the plea offer. In short, Petitioner has failed to demonstrate that the court of appeals' rejection of his ineffective assistance claim premised upon counsel's failure to adequately advise him during the plea offer process is contrary to, or an unreasonable application of, *Strickland*, *Hill*, or *Lafler*. Petitioner, therefore, is not entitled to relief on habeas ground III.

### IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable

16

or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:    September 15, 2023              /s/ Robert J. Jonker
                                          Robert J. Jonker
                                          United States District Judge